UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

```
--------------------------------------------------
IN RE:                                  )
                                        )   CASE NO.   11-31697
STANLEY GLEMAUD and                     )
KARLENE L. CHACON-GLEMAUD,              )   CHAPTER   7
                                        )
              DEBTORS.                   )   RE: ECF NO. 55
--------------------------------------------------
```

## MEMORANDUM OF DECISION AND ORDER
## ON UNITED STATES TRUSTEE'S MOTION SEEKING DISGORGEMENT OF
## ATTORNEY'S FEES

### I. INTRODUCTION

On June 24, 2011, Stanley Glemaud and Karlene L. Chacon-Glemaud (hereinafter, together, the "Debtors") commenced the present bankruptcy case by the filing of a voluntary petition under chapter 7 of the United States Bankruptcy Code. The case was assigned to then Chief Judge Lorraine Murphy Weil at the New Haven Division of this Court.[1] Barbara H. Katz, Esq. was appointed as the Chapter 7 trustee (hereinafter, the "Chapter 7 Trustee"). On April 11, 2012, the Debtors received their discharge, ECF No. 88. The Debtors were represented at the outset of the case by Attorney Heidi J. Alexander, (hereinafter, "Attorney Alexander") who, as will be discussed in more detail hereinafter, in the eighteen (18) month period prior to the filing of the petition commencing the instant bankruptcy case, filed four additional, unsuccessful petitions for the Debtors.

---

[1]Effective April 22, 2013, Chief Judge Weil retired from her position as judge of this Court, and on June 4, 2013, the case was reassigned to Chief Judge Albert S. Dabrowski, who in accordance with Fed. R. Civ. P. 63, made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 9028, certified "familiarity with the record", and determined after notice and hearing, *see* Bankruptcy Code §102(1) "that [the resolution of the balance of the Motion] may be completed without prejudice to the parties," ECF No. 119.

On January 9, 2012, Attorney Alexander was replaced as the Debtors' attorney by Attorney

Jefferson Hanna III (hereinafter, "Attorney Hanna"), ECF No. 61.

On December 28, 2011, Tracey Hope Davis, the United States Trustee (hereinafter,

"U.S. Trustee"),[2] filed a *United States Trustee's Motion for an Order Compelling the*

*Accounting and Disgorgement of Attorney's Fees and Memorandum of Law Concerning*

*Attorney Suspension,*[3] (hereinafter, the "Motion"), ECF No. 55, and a hearing thereon was

held August 15, 2012 (hereinafter, the "Hearing").[4]  In relevant part, the Motion sought as

a sanction against Attorney Alexander disgorgement of all attorney's fees paid to her by

the Debtors in connection with the five bankruptcy petitions filed on their behalf by Attorney

Alexander since 2009, and a return to them of said fees.  The U.S. Trustee identified the

amount sought as $3,299 (including $299 in court filing fees), the same amount which the

Debtors claim in a notarized *Affidavit of Stanley Glemaud and Karlene L. Chacon-Glemaud*

(hereinafter, the "Affidavit") to having paid her, ECF No. 98.  The U.S. Trustee sought such

sanction on the basis of her argument that the Attorney Alexander's filing of five separate

bankruptcies, four of which were dismissed over a short period of time, reflected her

incompetence as an attorney, caused injury to the Debtors and indicated a negligent

---

[2]While reference is made throughout to the U.S. Trustee, at all relevant times the U.S. Trustee was represented by staff attorney, Steven E. Mackey, Esq.

[3] To the extent the Motion sought an accounting, such an accounting was filed, *see Accounting: Per Order of the Honorable Lorraine M. Weil . . .* , ECF No. 97. Attorney Alexander was also suspended from the practice of law before this Court. *See, e.g.,* . . . *Order Concerning the Voluntary Suspension of Attorney Heidi J. Alexander From Practice in the United States Bankruptcy Courts for the District of Connecticut*, ECF No. 74.

[4]With respect that part of the Motion requesting the disgorgement of certain fees and return of those fees to the Debtors, the Motion was taken under advisement following the Hearing, and had not been acted upon by Chief Judge Weil as of the date of her retirement. *See Transcript of Proceedings of August 15, 2012*, ECF No. 102.

disregard for court rules, all of which conduct damaged the integrity of the bankruptcy system.

As an initial observation, is it clear that Attorney Alexander filed five serial and deficient bankruptcy petitions for the Debtors over a short a period of time, and provided inadequate representation to the Debtors in connection with the cases commenced by the filing of those petitions.  In every case, problems developed either from the failure of the Debtors or Attorney Alexander to file requisite documents, or as a result of the Debtors failure to attend required hearings.  Nevertheless, on the basis of the facts as presented and as discussed below, the question arises as to whether the Court has the authority to enter an award of monetary sanctions based upon the total amount of fees paid since 2009.

Specifically, the Debtors filed, within approximately eighteen months, five bankruptcy petitions, with Attorney Alexander as their counsel in each case.  But while the Debtors claim in their Affidavit to have paid her attorney's fees and court filing fees during the course of her representation of them in the amount of $3,299, in Attorney Alexander's *Accounting: Per Order of the Honorable Lorraine M. Weil On February 22, 2012 and Explanation of Counsel*, *with Exhibits A-K* (hereinafter, the "Accounting"), ECF No. 97, she indicates that she had, in fact, been paid a total of $3,600[5] (of which $2,500 was paid for

---

[5] What Attorney Alexander characterizes as an "operating account" and "cash records" submitted with the Accounting as Exhibits B and C, respectively, show that the Debtors made numerous cash payments (required because the Debtors had earlier given Attorney Alexander a check returned for insufficient funds), over a period extending from October 2009 through September 3, 2010.

3

an uncontested bankruptcy filing, pursuant to a signed Retainer Agreement),[6] that she was paid no attorney's fees or court filing fees for the last three bankruptcies that were filed, and that her representation of the Glemauds also extended to handling several foreclosure and housing cases as well as a criminal matter, for which she received little additional compensation.

## II. FACTUAL BACKGROUND

The following facts are either undisputed, derived from the files and records of the case, or supported by the evidentiary record at the Hearing.

Reviewing the history of each of the five petitions filed in this Court, beginning with the earliest, the Debtors filed on November 12, 2009, a petition under Chapter 7, Case No. 09-33201.  Because the Debtors failed to file required bankruptcy documents and failed to attend the Section 341 Meeting of Creditors,[7] the case was dismissed by the Court on February 11, 2010, ECF Nos. 6 and 49.[8]  Less than a week later, on February 16, 2010, the Debtors filed a second petition, this time under Chapter 11, Case No. 10-30432.  As is its custom in Chapter 11 cases, the U. S. Trustee requested proof that the Debtors maintained sufficient casualty and liability insurance to protect the bankruptcy estate. Because the Debtors failed to provide such proof, on March 10, 2010, after notice and a

---

[6]The Retainer Agreement, (hereinafter, the "Retainer"), dated October 14, 2009, ECF No. 97, Exh. A,  provided for the Debtors to pay $1,000 as an initial non-refundable retainer, with the balance of $1,500 payable over time. The Retainer specified that the $2,500 fee was for an "uncontested bankruptcy filing," and was inclusive of the initial filing fee. Any additional work such as defending an adversary proceeding was to be charged separately at a rate of $200 an hour.

[7]A separate Motion to Dismiss was filed by the Chapter 7 Trustee and was pending at the time the case was dismissed by the Court. *See* ECF No. 46.

[8] ECF Nos. relate to the particular case that is being described.

4

hearing, the Court entered an order dismissing the case on the motion of the U. S. Trustee, ECF No. 25.   On January 21, 2011, the Debtors filed a third petition, this time under Chapter 7, Case No. 11-30133.   The Debtors again failed to file required schedules and bankruptcy documents, and the case was dismissed by the Court on March 17, 2011, ECF Nos. 8 and 34.   Shortly after this dismissal, on April 28, 2011, Debtors filed their fourth petition also under Chapter 7, Case No. 11-31086, and following the same pattern, failed to file the required bankruptcy schedules and documents, resulting in the case being dismissed on June 22, 2011, ECF Nos.11 and 40.

Two days later, the Debtors commenced the instant Chapter 7 case by filing a bankruptcy petition, schedules and statement of financial affairs as well several other required documents, ECF No. 1 and 3.   However, neither of the Debtors filed a Credit Counseling Certificate as required by 11 U.S.C. §521(b)(1).   On June 27, 2011, the Bankruptcy Court issued a "deficiency notice" concerning the Debtors' failure to file their respective "Credit Counseling Certificate(s)" pursuant to 11 U.S.C. §521(b)(1), ECF No. 8. The Debtors' Bankruptcy Code §341 Meeting of Creditors (hereinafter, the "341 Meeting") was scheduled to be held on August 2, 2011 at 12:00 P.M., but neither the Debtors nor Attorney Alexander appeared on that date or requested a continuance.   Immediately thereafter, the U.S. Trustee filed a *Motion for an Order Compelling Debtors to Attend and Give Sworn Testimony at Their Meeting of Creditors in Addition to Dismissing Debtors' Chapter 7 Case With a Two (2) Year Bar . . . And Issuing An Order to Show Cause Why Attorney Heidi J. Alexander Should Not Be Sanctioned For Assisting the Debtors in Filing No Fewer Than Five Abusive Bankruptcy Filings Within 18 Months* (hereinafter, the "UST

5

Motion"), ECF No. 21.[9]  On September 21, 2011, the date set for the hearing, the UST

Motion was continued to September 28, 2011.

On September 28, 2011, the 341 Meeting was held at which documents were

provided but no testimony was taken. Thereafter, in response to the UST Motion, the Court

entered an interim order requiring that the Debtors appear at an adjourned 341 Meeting

to be held on October 25, 2011, give sworn testimony and supply additional documents to

the Chapter 7 Trustee, ECF No. 39.  On September 30, 2011, a separate *Order on the*

*United States Trustee's Motion for the Issuance of an Order to Show Cause Why Debtors'*

*Attorney Heidi Alexander Should Not Be Sanctioned for Assisting the Debtors in the Filing*

*of No Fewer Than Five Abusive Bankruptcy Filings Within 18 Months*, ECF No. 41, was

issued by the Court directing Attorney Alexander to appear before the Court at an

evidentiary hearing scheduled for December 7, 2011, and explain why she should not be

sanctioned by the Court for, *inter alia*, commencing the five successive bankruptcies, failing

to appear at meetings of creditors, and failing to provide the present Chapter 7 Trustee and

prior trustees with the schedules and documents required to administer the cases.

Meanwhile, at the continued 341 Meeting on October 25, 2011, the Debtors

appeared and testified and the matter was continued again to November 8, 2011 and

thereafter to November 22, 2011, without further hearings held.  On December 6, 2011,

a continued 341 Meeting was held after which it was continued to December 27, 2011, and

thereafter to January 10, 2012 and January 24, 2012, all without further hearings held.  On

---

[9]Shortly after the filing of the UST Motion, on August 9, 2011, the required counseling certificates were filed by Attorney Alexander, indicating thereon that each Debtor's Certificate of Counseling had been prepared and signed more than three months earlier on April 27, 2011, ECF No. 25.

January 20, 2012, the Debtors' new counsel, Attorney Hanna, filed with the Court an *Amended Statement of Financial Affairs,* ECF No. 67  and *Amended Schedules A, B, C, D, and I,* ECF No. 68, and the 341 Meeting was held and concluded on January 24, 2012, with a *Chapter 7 Trustee Report of No Distribution* filed on January 25, 2012, the timing of which indicating that the Trustee waited to conclude the 341 Meeting until after she received amended schedules.[10]

At the December 7, 2011 hearing at which the *Order on the United States Trustee's Motion for the Issuance of an Order to Show Cause . . .* , ECF No. 41, and sanctions against Attorney Alexander were to be considered and which was attended by the U.S. Trustee, Chapter 7 Trustee and the Debtor, Stanley Glemaud, Attorney Alexander did not appear but instead just prior to the hearing delivered  to the U.S. Trustee a doctor's note indicating that she was under psychiatric care, on medication and totally disabled from work.  During the December 7th hearing, no formal testimony was taken, and the Court directed the U.S. Trustee to file a memorandum in support of her position that a temporary suspension of Attorney Alexander's right to appear before the Bankruptcy Court was appropriate and invited the U.S. Trustee to file a separate motion to compel a return of attorney's fees paid under Bankruptcy Code §329.  On December 28, 2011, in response to the Court's statements at the December 7, 2011 hearing,[11] the U.S. Trustee filed the

---

[10]This was confirmed at the December 7, 2011 hearing during which the Chapter 7 Trustee complained to the Court that the bankruptcy petition filed in the present case was "essentially the same petition as had been filed in 2009 with no updates. . . .  I continued the meeting [of creditors] because I needed to have updated schedules to be able to accurately examine the Debtors." Tr. 12/7/2011, pp.22-23, ECF No. 53.

[11]Notwithstanding the lack of formal testimony, at one point in the December 7th proceedings, the Court asked Mr. Glemaud if he had paid Attorney Alexander for her services.  The Debtor responded "yes."  However, as discussed in more detail *supra*, pp.14-15, he did not specify when the fees were paid,

Motion now under consideration (*United States Trustee's Motion for an Order Compelling the Accounting and Disgorgement of Attorney's Fees and Memorandum of Law Concerning Attorney Suspension*, ECF No. 55), which was heard January 18, 2012, and thereafter continued to February 8, 2012.

On January 20, 2012, the Court entered an *Interim Order for Relief on the United States Trustee's Motion for an Order Compelling the Accounting and Disgorgement of Attorney's Fees and Restoring ECF No. 41 to the Court's Calendar*, ECF No. 65. In that Order, the Court, *inter alia*, directed Attorney Alexander to file an accounting on or before February 1, 2012 of all moneys paid by the Debtors to her from January 2009 to the present, along with a description of services provided, accompanied by relevant documents. The Court also placed back on the calendar and set for hearing on February 8, 2012, the unresolved issues pertaining to the *United States Trustee's Motion for the Issuance of an Order to Show Cause Why Debtors' Attorney Heidi Alexander Should Not Be Sanctioned* . . . , ECF No. 41.

On February 8, 2012, the Court considered both the unresolved issues arising from *United States Trustee's Motion for the Issuance of an Order to Show Cause Why Debtors' Attorney Heidi Alexander Should Not Be Sanctioned* . . . , ECF No. 41, as well as the Motion now under consideration. On that date, Attorney Alexander appeared and the parties stipulated as to both matters, culminating in the entry of *Order on the United States Trustee's Motion for an Order Compelling the Accounting and Disgorgement of Attorney's Fees and Order Concerning the Voluntary Suspension of Attorney Heidi J. Alexander From*

---

nor did he differentiate between the various bankruptcy cases or indicate the nature of the services for which the fees were paid.

*Practice in the United States Bankruptcy Courts For the District of Connecticut,* the terms of which (1), required her to file an accounting on or before February 22, 2012 of all moneys paid by the Debtors to the Attorney from January 2009 to the present, along with a description of services provided with relevant documents; (2), barred her from advising or representing debtors in the Bankruptcy Court for the District of Connecticut,[12] subject to the right to seek reinstatement,[13] and (3), ordered her to appear at a hearing on February 29, 2012 to show cause why she should not be further sanctioned by being required to disgorge all fees paid by the Debtors.  The Order was signed and entered by the Court on February 14, 2012, ECF No. 74.

The hearing scheduled for February 29, 2012 was not held, however, and on said date the Court entered a *Second Interim Order* . . . , ECF No. 80, allowing Attorney Alexander a week's extension to file the accounting.  The hearing on the balance of the issues raised in the Motion was continued to March 7, 2012, and thereafter continued on several successive dates.   On May 9, 2012, Attorney Alexander filed the ordered Accounting and thereafter, on May 21, 2012, the Debtors filed their Affidavit in response. On June 14, 2012, the Court entered a *Scheduling Order*, ECF No. 99, which set the Motion for an evidentiary hearing to consider the unresolved matter of the disgorgement of fees on August 15, 2012.   At the conclusion of the August 15, 2013 hearing

---

[12]In an *Order Re: Order to Show Cause*, dated November 26, 2012, ECF No. 114, Attorney Alexander was held in contempt for filing a new bankruptcy petition during the period of her suspension and the terms of the February 8th Order were extended along with the entry of additional non-monetary sanctions.

[13] Also on November 26, 2012, the Court denied without prejudice Attorney Alexander's *Motion for Reinstatement* . . . , ECF No. 113 "upon satisfactory proof of mental and emotional fitness to practice law. . . ."

9

(hereinafter, the "Hearing"), Chief Judge Weil took the Motion under advisement (insofar

as  the Motion requested the disgorgement of certain fees and return of those fees to the

Debtors) but did not render a decision thereon prior to her retirement. Having, *inter alia*,

certified familiarity with the record, *see* footnote 1, *infra*, the undersigned judge addresses

and resolves herein that matter.

## III. DISCUSSION

### A.    The Recovery of Fees Paid Under Bankruptcy Code §329[14]

> Section 329 of the Bankruptcy Code authorizes the Court to
> determine the reasonableness of compensation and the source of such
> compensation paid to a debtor's attorney for representing the interests of
> a debtor in connection with a bankruptcy case. . . . Further, §329 is
> implemented by Bankruptcy Rule 2016, which requires attorneys to file a
> statement disclosing "the compensation paid or agreed to be paid . . . for
> services rendered or to be rendered . . . in connection with the case by
> such attorney, and the source of such compensation" within 14 days of
> the order for relief. 11 U.S.C. § 329; Fed. R. Bankr. P. 2016(b); *see also*
> *In re Chatkhan*, 2012 Bankr. LEXIS 886, at *17-18 (Bankr. E.D.N.Y.
> March 5, 2012).

*In re Chin Kim*, Case No. 10-77169, 2012 Bankr. LEXIS 4210, at *8-9 (Bankr. E.D.N.Y.

September 6, 2012).

With respect to the determination as to whether the fees paid meet the test of

reasonableness:

---

[14]11 U.S.C. §329 provides in relevant part: "(a) Any attorney representing a debtor in a case
under this title, or in connection with such a case, whether or not such attorney applies for compensation
under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such
payment or agreement was made after one year before the date of the filing of the petition, for services
rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the
source of such compensation.
    (b) If such compensation exceeds the reasonable value of any such services, the court may
cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
        (1) the estate, if the property transferred—
            (A) would have been property of the estate; or . . .
        (2) the entity that made such payment."

> It is ultimately for the court to decide whether or not the compensation is
> reasonable under Section 329(b). "What constitutes reasonableness is a
> question of fact to be determined by the particular circumstances of each
> case. The requested compensation may be reduced if the court finds that
> the work done was excessive or of poor quality." 3 Alan N. Resnick &
> Henry J. Sommer, Collier on Bankruptcy ¶ 329.04[1], at 329-14 (16th ed.
> 2010) ("Collier on Bankruptcy"). In determining the reasonableness of a
> given fee, the court should consider factors including the "competence of
> the performance" and the "nature of the services." *In re Grant*, 14 B.R.
> 567, 569 (Bankr. S.D.N.Y. 1981). "Once a question of the reasonableness
> of counsel's fees is raised by a party in interest bringing a motion, the
> attorney bears the burden of proving his fee was reasonable." *In re Wood*,
> 408 B.R. 841, 848 (Bankr. D. Kan. 2009); *see also Snyder v. Dewoskin (In
> re Mahendra)*, 131 F.3d 750, 757 (8th Cir. 197), *cert. denied*, 523 U.S.
> 1107, 118S. Ct. 1678, 140 L. Ed. 2d 815(1998) (footnote omitted).

*In re Chez,* 441 B.R. 724, 730 (Bankr. D. Conn. 2010).

At the Hearing the only witness testifying was Attorney Alexander.[15]  It was her

testimony that if required documents were not filed in the Debtors' cases, it was their own

fault for ignoring the lists of required documents she had given them, and that whenever

documents were provided to her, they were turned over to the Court and/or Chapter 7

Trustee.  The U.S. Trustee relied on the files and records of the relevant cases, and the

previously filed Affidavit in which the Debtors claimed to have paid Attorney Alexander

$3,000 for her services and $299 for court fees; that they were represented "extremely

poorly", and that she "proved to have little knowledge of bankruptcy law and a habit of

procrastination and inattention to detail," ECF No. 98.

When cross-examined by the U.S. Trustee as to why, in light of the Debtors alleged

failure to fully cooperate, Attorney Alexander did not hold off filing subsequent petitions

until all the required documents were first in her hands, she explained that each filing was

---

[15]Neither the Glemauds nor their new attorney (Attorney Hanna) appeared at that Hearing.

an "emergency" to a greater or lesser extent.  As it concerned the filing of the Chapter 11

petition, she claimed the Debtors' were threatened with eviction from their restaurant in

state housing court; in the other cases, she claimed that either their residential and/or

business property was about to be foreclosed or their car repossessed, Hearing Tr. August

15, 2012, pp.11-12, 35, ECF No. 102.  She also testified that one of the reasons she kept

filing successive petitions was because "they paid me for a bankruptcy filing, and I wasn't

able to give them a discharge.  So I felt I still owed them a bankruptcy filing," Hearing .Tr.

August 15, 2012, p.29, ECF No. 102.

On the other hand, notwithstanding the difficulties that Attorney Alexander testified

the Debtors faced in supplying the necessary schedules and documents, including their

pay advises, she admitted that in none of the cases did she move for an extension of time

to allow the Debtors an additional opportunity to file the missing schedules and documents

and prevent the dismissals. Hearing Tr. August 15, 2012, pp.30-32, ECF No. 102.  Attorney

Alexander admitted she did not "attend to" one of the cases but explained she then

suffered from a detached retina.  Nevertheless, she took no action to refer the Debtors to

another attorney or obtain an extension of time that might have prevented the case from

being dismissed. Hearing Tr. August 15, 2012, p.31, ECF No. 102.  Nor did she have any

explanation for the fact that once Attorney Hanna filed his appearance and replaced her

in the instant case, the schedules and documents the Debtors supposedly had such

difficulty turning over to her when she was serving as their attorney, were filed with the

Court with reasonable promptness. Hearing Tr. August 15, 2012,  pp.32-33, ECF No 102.

12

Further, a cursory examination of the schedules filed in the two most recent cases show unexplainable inconsistencies and errors that cannot be reasonably attributable to the Debtors. For example, in the Chapter 7 case filed on April 28, 2011, the Debtors' residence on Saddle Hill Drive in Middletown, CT, was valued on *Schedule D-Creditors Holding Secured Claims,* at $367,000. Two months later, when the Debtors filed the present case, the same property was valued on *Schedule D-Creditors Holding Secured Claims*, at $460,000.  In the April filing, the Debtors' rental property at 134 -136 Liberty Street, Middletown, CT was valued at $147,000; in the present filing, it was valued at $250,000.  In the April filing, the rental property at 113 -115 Grove Street, Middletown, was valued at $82,000; in the present filing, the same property was valued at $215,000.  At the same time, the amount of secured debt was listed as identical on both schedules, even though at least two months had gone by between the bankruptcies and the amount of debt would have changed.[16]

Other errors on the schedules were clearly typographical but could have led to difficulties for the Debtors.  On *Schedule B-Personal Property* filed in the April bankruptcy, among the assets listed is a "Sharebuilder" stock account owned by Mr. Glemaud and valued at $3,990.  However, in the present case, that same stock account is valued at $39.90[17], and exempted in the same amount.  If the Sharebuilder stock account was truly worth $3,990, and not $39.90, the Chapter 7 Trustee would have had the right to demand

---

[16]Even more incredible is the fact that a review of *Schedule D- Creditors Holding Secured Claims* accompanying the 2009 filing shows the value assigned to the properties and the amount of secured debt listed is exactly the same as in the present case.

[17]On the Debtors' *Schedule C-Personal Property* in the 2009 case, the same stock account was also valued at $39.90.

13

the turnover of the unexempted amount for the benefit of the estate.

As further examples of other errors on the schedules, in the April filing, on *Schedule I-Current Income of Individual Debtor(s)*, Mr. Glemaud is described as having worked at Innovative Properties for "2 years," and Mrs. Chacon-Glemaud at Aetna for "3 years." However, in the present, more recent filing, they are described on Schedule I as having worked for their respective employers for "1 year and 2 mos" and "1 year and 9 mos." Finally, the Debtors' income and expenses reported on Schedules I and J in the present case, are identical to the income and expenses reported on Schedules I and J in the 2009 bankruptcy.  It is transparently obvious that the schedules filed in the present case were simply a rehash and muddled combination of earlier filed schedules, with no effort made to obtain and provide current, accurate numbers and facts.

The Court also notes that, aside from Attorney Alexander's  responsibilities to her client, as an officer of the Court she had a responsibility to timely discharge her duties under the Bankruptcy Code.  She did not live up to those responsibilities with resultant delay and prejudice to creditors and the Court.  Her claim that she continued to file emergency bankruptcy petitions for the Debtors notwithstanding their so-called lack of cooperation and/or inability to file the requisite documents, assuming that is true, does not override her ethical duty to the Court, and to the officers administering the cases, to abstain from filing repeated petitions replete with inaccuracies and resplendent with other deficiencies.  The Court finds Attorney Alexander's conduct and representation in these cases to be negligent and irresponsible with resultant injury to creditors of the estate, a number of whom were forced to expend considerable time, effort, and money in filing

14

successive relief from stay motions.

### 1.    *The amount of fees paid for the services provided*.

The failure of the Debtors to appear and testify in connection this matter, has left somewhat unclear exactly how much was paid by the Debtors for the filing of the five bankruptcies, which amount the U.S. Trustee is seeking repaid to the Debtors as a sanction, and how much for other legal services.  Nor is it entirely clear when the attorney's fees were paid.   Attorney Alexander concedes that $2,500 was paid as a fee for the bankruptcies and makes a qualified offer in her Accounting to forfeit the fee.   ("Counsel does not claim the $2,500 flat fee in light of the U.S. Trustee's Motion ECF No. 55 [for an accounting, disgorgement and attorney suspension] and counsel's failure to obtain a discharge of the case . . . ," ECF No. 97 at ¶11.  While the Debtors state in their Affidavit that $3,000 in attorney's fees and $299 in costs were paid, they do not differentiate the bankruptcy fees from fees paid for other legal services provided by Attorney Alexander, notably, the foreclosure actions, eviction and criminal proceedings that she also handled for them. Nor were they available to challenge the statements of Attorney Alexander that her services in those other matters were of value to the Debtors and that the fees and costs in connection with those services exceeded $7,797.46,[18] and as a consequence, that she should be allowed to offset the $2,500 in bankruptcy fees she is waiving, against the other services provided and for which fees were due but not paid.

---

[18]Attorney Alexander also noted that she was forced to pay court filing fees ($299.00 each for four prior Chapter 7 cases and $1,039 for the prior Chapter 11 ) and other related charges, all of which totaled $2,385. How she can reconcile waiving the attorney's fees she charged for the prior bankruptcies in light of her acknowledged failure to complete the Debtors' cases yet be entitled to reimbursement of the costs for all of those filings is inexplicable to the Court.

Nevertheless, the Court will decline Attorney Alexander's request to consider ordering the Debtors to pay to her the fees that she asserts are due for other legal services she claims to have provided. Nor will the Court authorize her to offset $2,500 against the fees paid for the bankruptcy petitions.  It appears that much of the fees claimed for non-bankruptcy services were incurred prior to this bankruptcy filing and thus, may have been discharged.   The Chapter 7 Trustee here filed a Trustee Report of No Distribution, reflecting the fact that the estate had no assets available to distribute to unsecured creditors, which would have included Attorney Alexander.  Even if there had been assets available, the fees sought were of no benefit to the bankruptcy estate and Attorney Alexander was not employed by the Chapter 7 Trustee to represent the estate.[19]

> ### 2.    *Whether the fees were paid within a year of the filing of this case*.

The U.S. Trustee argued at the Hearing that the filing of and later dismissal of the Debtors' first four bankruptcies, and Attorney Alexander's inability to complete the fifth, warrants monetary sanctions for a "continuing course of conduct,"[20] in an effort to avoid the language in §329(b) which appears to limit the courts ability to "order the return of fees paid to *"such* payment" made within "*one* year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney . . . ." 11 U.S.C. 329(a) and (b) (emphasis added); *In re Keller Fin. Servs. of*

---

[19] *See Lamie v. United States*, 540 U.S. 526, 124 S. Ct. 1023 (2004) (Bankruptcy Code §330(a)(1) bars compensation to a Chapter 7 debtor's attorney unless employed by the trustee and approved by the court).

[20] At the Hearing, the following discussion ensued:  "The Court: All right. Well, this then really isn't so much a 329 action as a, as I said – Mr. Mackey: As a sanction. The Court: -- as a sanction for a continuing course of conduct. Mr. Mackey: Exactly."  Tr. August 15, 2012, pp.35, 43, ECF No. 102.

*Fla., Inc.*, 248 B.R. 859, 877 (Bankr. M.D. Fla. 2000). While Attorney Alexander's

Accounting indicates that one payment of $600 was made by the Debtors to her on

September 3, 2010, within a year of the present bankruptcy, she claims that the $600 was

made to compensate her for other, non-bankruptcy related services.  Her Accounting also

indicates that while attorney's fees specifically related to the filing of bankruptcy were paid

several years ago for the two earliest filings, no fees were paid for last three bankruptcies,

including the present one.

Nevertheless, in the *Disclosure of Compensation of Attorney For Debtor(s)*,

(hereinafter, the "§329 Disclosure"), ECF No. 1,  filed under Bankruptcy Code §329(a) and

Fed. R. Bankr. P. 2016(b) in the present case, Attorney Alexander certified that she had

been paid $2,500 within one year before the filing of the petition and that there was a

balance remaining due of $2,500.  There was no reference to the $600 paid within the

year.   While Attorney Alexander established through the documents submitted as

attachments to her Accounting that she performed a number of other legal services for the

Debtors, prior to and subsequent to this bankruptcy, she submitted no documentary

evidence in the form of additional retainer agreements or billings indicating to what services

she applied the additional payments.  Thus, her testimony at the Hearing that certain

payments were made for non-bankruptcy services is inadequately supported by proof, is

clearly self-serving and not credible in light of her conflicting §329 Disclosure indicating that

the $2,500 *was* paid within the year of filing, that the Debtors owed her an additional

$2,500, and failure to make reference to the $600.

Further, even if the $600 was intended as payment for other legal services she

provided, all of those other services, arising as a consequence of and related to the

17

Debtors' financial difficulties, affected assets and properties that were also part of the bankruptcy estate.  *See In re Keller Financial Services of Florida, Inc*., 248 B.R. at 879 ("The Phrase ['in connection with'] may include services related to the precipitating cause of the bankruptcy, or services which are inextricably intertwined with the bankruptcy"); *see also, In re Storey*, Case No. 08-00198, 2009 Bankr. LEXIS 2547, *1 (Bankr. D. D. C. June 29, 2009):

> With respect to whether an attorney's services were "in connection with the case," the courts treat that phrase as having an extensive reach. *See In re Laferriere*, 286 B.R. 520, 528 (Bankr. D. Vt. 2002). Once an attorney *is* "representing the debtor in [the] case" within the meaning of §329(a), that attorney must disclose compensation for services on any matter having a connection with the case. Services are "in connection with" the bankruptcy case "if it can be objectively determined that the services rendered or to be rendered by the attorney have or will have an impact on the bankruptcy case." *In re Rheuban*, 121 B.R. 368 (Bankr. C.D. Cal. 1990), *rev'd in part on other grounds*, 124 B.R. 301 (C.D. Cal. 1990), *on remand*, 128 B.R. 551 (Bankr. C.D. Cal. 1991).

*In re Storey,* 2009 Bankr. LEXIS 2547, at *5

All of the other services described by Attorney Alexander to a greater or lesser extent, related to the precipitating causes of the Debtors' bankruptcy.  Each of the foreclosure and summary process actions she handled concerned estate assets that were scheduled and dealt with by the bankruptcy, including actions to avoid liens.  The criminal action in connection with which she represented Mr. Glemaud arose because of unpaid business taxes incurred during the course of the operation of his restaurant. Those taxes were scheduled in the bankruptcy and at least to the extent of the automatic stay, were affected by it. Therefore, at minimum, the $600 paid by the Debtors within a year of the bankruptcy is subject to recovery.

18

The Court's concludes that all fees paid within a year of the bankruptcy, namely the $600, "exceed the reasonable value of any such services."[21]   The services provided by Attorney Alexander in connection with the bankruptcy provided no tangible benefit to the Debtors.   The Court also notes that the Debtors were forced to pay an attorney's fee to Attorney Hanna to complete the present bankruptcy.   Thus, the Court will require as a sanction under §329 that Attorney Alexander return to the U.S. Trustee, subject to forwarding to the Debtors, the $600 she was paid within a year of the bankruptcy.

## B.    *The Recovery of Fees Paid Under Fed. R. Bankr. P. 2017*[22]

There is also support for the Court to direct Attorney Alexander to return additional sums sought by the U.S. Trustee, identified by the Debtors as having been paid to her since 2009 but more than a year prior to the filing of the present case.   Even if the Court disregards the §329 Disclosure in which the Attorney represented that the $2,500 was paid by the Debtors within the year of the bankruptcy (implying that notwithstanding the actual date of payment, she intended, at least initially, to treat the payments as if they had been made in the present case), Bankruptcy Rule 2017 allows the Court to examine *all* fees paid to the Debtors' Attorney.   "Rule 2017(a) directs the court to determine, either *sua sponte*

---

[21]The failure of the Attorney to list the $600 paid within the year of bankruptcy on her §329 Statement would by itself warrant denial of fees;  *In re Chez*, 441 B.R. at 731 ("Indeed, it has long been the practice in [the Second Circuit] to deny compensation to counsel who fail to comply with the disclosure provisions . . . .") (alterations in original) (quoting *In re Laferriere*, 286 B.R. 520, 526-27 (Bankr. D. Vt. 2002) quoting *Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.*, 655 F.2d 463, 469 (2d Cir. 1981).

[22]In relevant part, Rule 2017 provides,
"Examination of Debtor's Transactions with Debtor's Attorney
(a) Payment or Transfer to Attorney Before Order for Relief. On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive."

19

or upon motion by a party in interest, whether any payment or transfer of property to an attorney 'in contemplation of' the filing of the bankruptcy petition is excessive. Taken together, §329(a) and Rule 2017(a) 'furnish the court with express power to review payments to attorneys for excessiveness and to restore the status quo when assets have improvidently been bartered for legal services[.]' *In re Martin*, 817 F.2d 175, 180 (1st Cir. 1987) (footnote omitted)," *In re Perrine*, Case No. RS 05-13979, 2007 Bankr. LEXIS 1138, at *16-17 (Bankr. C.D. Cal. March 23, 2007); *In re Chin Kim*, 2012 Bankr. LEXIS 4210, at *9, ("Bankruptcy Rule 2017 expressly authorizes the Court to analyze and determine whether any payment made to a debtor's attorney before an order for relief is entered is reasonable or excessive").

In *In re Laferriere*, 286 B.R. 520, 529-530 (Bankr. D. Vt. 2002), the court stated that under Bankruptcy Code §329, courts are generally limited to the one year look back period but that the look back period is based upon a presumption[23] that may be rebutted by fraud or concealment, citing the decision of the Fifth Circuit Court of Appeals in *Arnes v. Boughton (In re Prudhomme)*, 43 F.3d 1000 (5th Cir. 1995).[24]   Both the *Prudhomme* and *Laferrier*e courts noted, however, that Rule 2017 also provides an independent basis for the Court to determine "whether *any* payment made in contemplation of the filing of a

---

[23]The presumption is that any compensation paid before the year prepetition was not for services "in contemplation of" or "in connection with" a bankruptcy. Collier on Bankruptcy P [329.03] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)(2013).

[24]Assuming for the sake of argument that this Court agrees with the conclusions of these courts, consideration of fraud and concealment does not seem appropriate in this case as reflected by the U.S. Trustee's statement at the Hearing that "I know that Attorney Alexander, even though it has not been placed in evidence, Attorney Alexander has had some medical problems recently. And if I had -- if the U.S. Trustee had -- had thought that things were done intentionally rather than with negligence, further sanctions would have -- would have been sought." Tr. August 15, 2012, p.43, ECF No. 102.

bankruptcy case by a debtor to an attorney, for services rendered or to be rendered, is excessive" (emphasis added), *Laferriere*, 286 B.R. at 526, *Prudhomme*, 43 F.3d at 1003 ("rule plainly contains no one-year limitation period"); *accord*, *In re Chin Kim*, 2012 Bankr. LEXIS 4210, at *9.

For the same reasons as discussed earlier, ample evidence demonstrates that Attorney Alexander did not render any services in connection with the Debtors' bankruptcies that benefitted the Debtors, and that such services were unsatisfactory. It was not until the Debtors engaged new counsel who was forced to file amended schedules that the Debtors were able to obtain their discharges. Therefore, in addition to the $600 paid within the one year period prior to the filing of the present bankruptcy case, Attorney Alexander is also required to return to the U.S. Trustee for forwarding to the Debtors, $2,400 of the $2,500 in fees paid by them to her in accordance with their retainer agreement, for a total payment of $3,000.

## IV. CONCLUSION AND ORDER

This Court concludes that Attorney Alexander's legal services in connection with the commencement of five bankruptcy cases provided no tangible and material benefit to the Debtors. Attorney Alexander had the burden to prove that the fees she charged in connection with these cases were reasonable. She has not met that burden.

Accordingly, attorney's fees in the amount of $3,000 previously paid by the Debtors to Attorney Alexander must be disgorged by her and paid within fourteen (14) days of the date of this Memorandum and Order to the U.S. Trustee for forwarding to the Debtors.

**IT IS SO ORDERED**.

Dated: August 21, 2013                                              BY THE COURT

Albert S. Dabrowski
Chief United States Bankruptcy Judge